You may call the first case. Mr. Greco? Yes, good morning, Your Honor. Thank you for being here today. I know this is a little larger audience than you're accustomed to in oral arguments, but we do appreciate your willingness to have this. Absolutely, Your Honor. We're ready for all covers. May it please the court, counsel, Mr. Clerk, and guests of the court. My name is Michael Greco, as you mentioned, and I represent the appellant, Kent Carr, in this case. Mr. Carr was convicted of, most specifically pertinent to this appeal, the crimes of criminal damage to government-supported property and driving under the influence of alcohol. We submit that there are irremediable errors, or irremediable gaps in the evidence, I would say, that inflict particularly the proof offered at trial, taking all the evidence from all parties, from all witnesses into account, as to the claim of criminal damage of government-supported property. We also submit, secondarily, that there is an issue as to the credibility of the primary witness, Trooper McKellie, as to the charge of driving under the influence of alcohol, which taints the evidence in that case sufficiently to undermine confidence in the judge's finding. This was a bench trial, so, as Your Honors know, the standard – I'm sorry. It was a bench trial, so the standard is, if the evidence is deemed by the court to be so unlikely or inadequate, as to leave unresolved a reasonable doubt as to the defendant's guilt, reversal would be required. That's Peeble v. Jimerson from the Supreme Court in 1989. So, where's the reasonable doubt? The reasonable doubt we submit, particularly as to the criminal damage of government-supported property, is with regard to the final element that the state must establish, beyond a reasonable doubt, that the property damaged was supported by state funds or by federal funds administered by state of Illinois agencies. Okay. You can prove a fact beyond a reasonable doubt with circumstantial evidence, correct? Yes, Judge. This vehicle that was damaged had Illinois State Police written on it, correct? Yes, Judge. It had Illinois State Police license plates. Yes, Your Honor. An Illinois State Police trooper came into court and testified, that was my police car, that he kicked the window on it, right? Your Honor, he did. However, he testified that he was the fleet manager. You're referring, Your Honor's referring to... Well, the trooper also testified, but the trooper also testified, too, right? The fleet manager testified, but the trooper that was driving that car testified, too, didn't he? Yes, he did, Judge. Yes, Your Honor. So, in other words, what makes that so unreasonable, improbable, or unsatisfactory to justify a reasonable doubt? The source of the funding is an element of the crime that has to be proved beyond a reasonable doubt, and the state is aware of this because they brought in Trooper Michael Ketter, the fleet manager for the Illinois State Police, for the purpose of establishing this element. Well, who do you suppose buys those cars? Your Honor, that... Just take a wild guess. Yes, I will take a wild guess, and I suppose that everybody in the room would say that we suppose that the state of Illinois buys the cars. But the testimony of Trooper Ketter was that the cars are acquired by central management systems, and he did not know the source of funding of the central management systems. If they were acquired by the private organization, Mothers Against Strong Driving, for instance, Your Honor, he would have no idea about that. He would not be able to dispute that. Were you the trial attorney, the defense attorney? I was the trial attorney, yes, Judge. Didn't you have an opportunity to cross-examine the fleet manager on that point and probe the issue a little bit more once he said he assumed that the cars were purchased with tax dollars? Did you ask him or probe that issue? I asked him what he believed the source of funding for central management systems was, I believe, because that was as far as he could trace the path of the cars. He did not know how they were titled, in whose name they were titled, whether they were leased, borrowed, or acquired by purchase. And I believe that when I received the answer that taxes, I'm assuming, for the state of Illinois, were the source of funding for central management systems, I believed as an advocate that I had gone as far as I would be able to go with this witness. Well, perhaps you could have asked him if it was possible that funds from Mothers Against Drunk Drivers had been used. It is possible, yes. I could have asked him that, Judge. And in that way give us a better record to support your position that it was not established beyond a reasonable doubt that these cars were purchased, operated, or maintained only with tax funds. But, you know, we're confined to this record that we have that you prepare in the trial court for. Yes, Your Honor, that is correct. However, it is not the defendant's burden, as Your Honor knows, to fill in all the lacunae in the state's offer of proof, in the state's proof. So the only issue with regard to the felony offense of criminal damage to property you believe was not proven beyond a reasonable doubt is the issue of whether the car was purchased with state-supported funds? I submit that there was sufficient. It's my own opinion as an advocate, to the extent which it's relevant, that the other elements were proved sufficiently to withstand appellate scrutiny. Okay. With regard to the window breaking? With regard to the window breaking, with regard to the defendant's intent to actually break the window, the record shows that he testified that his foot slipped. He was restrained in the rear of the vehicle in a somewhat uncomfortable position. Unfortunately, he was not able to be here today, but he's completing his probation to the extent that that's relevant. But he was not able to be here today. But he is over 6 feet tall. He's quite a tall person. He was in a very uncomfortable position in the back seat of this vehicle. So you want us to examine whether the window was broken accidentally? It was our position that it was. That was not accepted by the trial court. Was it broken or shattered? It was broken. There are photographs, I believe, in the record. The frame appears to have been bent. I don't believe that. There's another charge of driving under the influence of alcohol. Are you making the same arguments that the state didn't prove that offense beyond a reasonable doubt as well? We submit that the testimony that was elicited by the defense of Trooper McNally as to the fact that he placed in his report that there was a refusal to submit to a breathalyzer test. He admitted on cross-examination that he actually did not offer the breathalyzer test because of the circumstances of the arrests and detention of Mr. Carr. He did not believe that it was. He fell for officer safety reasons, I believe. Because of that mistake in the report, you think that the trooper's testimony was not credible? Yes, Your Honor. I submit that that undermines his credibility. How would you describe your client's demeanor? There was video. My client was upset. He had his young children with him at the time that he was arrested, and I would have to say that he was upset. I don't believe that there was any evidence that he – there was no evidence that he comported himself violently against any individual. There was some – I think there was some assertion that one of the troopers said he was kicked or he had trouble restraining him. But my client did not – he was upset. He was somewhat agitated by the situation. Getting back to the police report, though, the officer wrote that he clocked your client traveling 105 miles an hour. When he stopped the car, he noticed a strong odor of alcohol, found a 2-year-old child sitting on his lap, was not properly restrained. Is there anything about those facts that were included in the police report that you feel the judge unreasonably found to be credible? I think there was some issue as to the trooper's actual identification of the vehicle when he came upon the vehicle. There was a video feed of the arrest that was offered by the state at trial, and it was 10 or 15 – when my client's vehicle first comes into view, it is actually stopped at the roadside. And so there's no actual video of Trooper McNally chasing my client's vehicle or clocking the purported velocity of my client's vehicle. It was after the stop. With the accidental break, I mean, do you ever try to break a window off a car? I have not personally, Judge. I'm proud to say it would be substantially difficult, Your Honor. It would take some force, Your Honor, I believe. And as far as the refusal versus, gee, I didn't give it to him because he was – I mean, he wasn't convicted or charged with refusal, right? He was not, not convicted of – not charged with obstruction of justice or anything like that. And you can be convicted of DUI without a blood test or a breath alcohol test, right? Absolutely, Judge. Yes, that's correct. And a policeman who's got a guy that's fighting doesn't have to – or combative doesn't have to deal with that and give a breathalyzer. He doesn't have to offer him the breathalyzer under those circumstances, does he? No, he does not, Judge. It's the divergence in between the report asserting that there was a refusal by the defendant to give the breathalyzer in contrast to the testimony where actually we didn't offer him the breathalyzer. Well, but then that goes to – you're saying this goes to the witness, the trooper's credibility. Yes, Judge. Okay. And ultimately the credibility determination is made by the trier of fact. The appellate court, we're not supposed to retry this case, are we? No, you're not, Your Honor. And it just was his finding against the manifest way to the evidence. And your argument seems to be that as a matter of law, that inconsistency in the report rendered the trooper not credible. Insufficiently credible. And you've never seen a case that said that one inconsistency in a report makes a witness, as a matter of law, incredible or not credible. I have not seen that case, Your Honor, no. So if we did, that would be the first court that you're aware of that would say that, right? I submit, Your Honor, that it's actually something that I've not evaluated, Your Honor, but I think that a divergence between the officer's sworn report and the officer's report, which he attests and prepares in the course of doing his job at the time of the purported offense, and his testimony on the stand, which is sworn under oath in court, more formal, I think that kind of a divergence is a type of evidence of fabrication that would undermine confidence in the verdict sufficiently. It wasn't that you were recording, though, from the officer's squad car camera of what happened after your client was pulled over. Did that include the field sobriety test? It did, Judge, yes. Those were pretty unsatisfactory as far as the encounter. My client was not stumbling around. He was sitting on the edge of his vehicle for quite some time while Trooper McNally did what police officers ordinarily do, incident to a traffic stop and, in this case, a DUI stop. So there was quite a bit of time. The children, there were small children in the car that had to be dealt with. So I would not suggest that the field sobriety test, as depicted on the video that was offered at trial, are not so conclusive as to my client's purported state of intoxication to establish beyond a reasonable doubt, based upon that visual appearance that he was driving while under the influence. Did the judge have an opportunity to see the videotape? Oh, she did, yes. It was offered to evidence. And our standard is to look at the evidence in the light most, when there's an attack on the sufficiency of the evidence, look at the evidence in the light most favorable to the state and decide whether any reasonable trier of fact could have found the client guilty of these offenses, correct? That's correct, Judge, yes. Okay, thank you. So going back to the car, isn't the only reasonable conclusion that that car that said Illinois State Police on it, with Illinois State Police license plates, driven by an Illinois State trooper, was paid for by the taxpayers of the state of Illinois? Judge, it's not an unreasonable conclusion. However, the case law from this court, People v. Henderson, and from the Second District, People v. Bartlett, this is an issue that the courts look at, and the courts test the proof of whether the property damaged was actually state-supported or purchased or acquired with federal funds administered by the state for state purposes. In other words, it's an element of the offense. That's definitely true, yes. I don't believe that that conclusion, based on the decals on the car and the use by the troopers. We convict people of murder sometimes when they don't even have a body and nobody saw them doing it. Well, Joe killed Fred. Well, where's the body? Well, we haven't seen Fred in a long time, and we're pretty sure he's dead. Yes. Okay? And nobody saw this guy do it. So on circumstantial evidence like that, nobody, nobody, we put Joe in prison for life for killing Fred when they haven't found Fred's body, and nobody saw Joe kill Fred. That's correct, Your Honor. This is a case where the proof actually is in the control of the state of Illinois, maybe not particularly the state's attorney's office for the Third District, but nonetheless, it's in control of witnesses in the state of Illinois. They have access to the records, and they bring proof. The issue isn't whether they could have come up with the title of the car, but it's whether they needed to do it is really the issue before us, right? Whether they could have put on more evidence is not the issue, is it? That's part of the issue. The issue is whether the evidence that they did put on is satisfactory to afford proof beyond a reasonable doubt from which a trier of fact could reasonably find guilt as to that element. Can I ask one follow-up question with regard to the appeal? You referred to the number of the one charge, but not the DUI, but you're appealing both of them today? Actually, there's three cases. One was 10CF216, 10DT, the DUI, 244, and 10TR3668, which is the speeding charge, and I have the same concerns as Justice Carter. Our notice of appeal only has 10CF216. Were these cases consolidated in the trial court? They were consolidated for trial. I can't point to a consolidation order. They were tried together. I know I did not amend the notice of appeal, but I believe that they were all tried and convicted. Both sides have briefed on the issues, but at trial, everything was at one trial. Everything was one trial. They did index all the case numbers, I believe. But your client was sentenced to 30 months probation, correct? You're correct, Your Honor. He would not have completed it. He's making progress with his probation. But on the DUI, it was a misdemeanor DUI, wasn't it, or was it a felony DUI? Yes, that's correct. So the sentence on the DUI had to be different than the felony period of probation. Yes, Judge. So the sentences or the judgments are separate orders. Yes, Judge. That's correct. So I'm a little confused as to which order you intended the appeal to apply to, because when I read the notice of appeal, it says order. It sounds singular to me. Yes, Judge. My intent was to attack both the DUI conviction as well as the criminal damage to the government of the felony conviction. Did your post-trial motion for requesting a new trial address both cases? I believe it did, Your Honor. All right. Thank you. I'm reasonably certain it did. Any other questions? All right. Thank you. You did a nice job of handling all our questions here today. I appreciate that. Thank you, Your Honor, very much. Ms. Chowdhury? It's always daunting to come up when the Court is so active with questions, I know. May it please the Court, Counsel? Under the first issue, a defendant does not contest that the criminal damage occurred to the Illinois State Police vehicle. He only contests that the evidence not established as a squad car was purchased through state funds. And yet Trooper Michael Cutter clearly testified that the police squad cars are purchased through CMS, which is Central Management System, a state agency. And Trooper Cutter testified that CSM was funded, quote, through taxes, I'm assuming for the State of Illinois. The fact that he did not know where the source of the funds was does not negate that it was from the State of Illinois. You would agree that's circumstantial evidence? I mean, in my interpretation, when he says the State of Illinois, I'm assuming it's the State of Illinois. He just didn't know the source of the funds. That's how the State interprets it. You used the word assume. You used the word assume. Did I? That's our position is that it was from the State of Illinois in our interpretation. Is an assumption good enough for proof beyond a reasonable doubt of an element of the offense? No, I misspoke. It's not an assumption. I mean, based on our interpretation, he stated State of Illinois. The only question is that he did not know the source of the funds. The trooper did use the word assume, and I think you did inadvertently. I mean, quoting him. Correct, I did quote him. That's what his quote was. Through taxes, I'm assuming for the State of Illinois. And our interpretation is that he did not know the source of the funds. That's why he said taxes. But it was clear that he definitely said State of Illinois. Okay. Finally, I understand. So the assumption in your mind, the officer was assuming it was tax funds. Correct. And not some sort of other fee generating income to the State. But in either case, State money purchased the squad car. That's correct. All right. Exactly. And the officer, like I said, clearly testified. Just the fact that he did not know the source does not negate the fact that it was from the State of Illinois. And defendant did not at any time rebut or cross-examine the officer's testimony. So the testimony was unimpeached. And we feel that this issue is pretty straightforward. It was uncontested that the squad car was State squad car driven by a State police officer. And that, in essence, is circumstantial as well, as is to his truck testimony. And for the second issue, we agree that there obviously was an inconsistency in the police report. And the trooper, McNally, clearly testified to that, that the inconsistency did occur. And he clarified on trial that he, in fact, did not offer a breathalyzer test because the defendant was very belligerent and was out of control. As to the other officers who testified to the same, that the defendant was out of control and was not really cooperating. Well, would it be totally unreasonable for a police officer, this trooper, to say if you've got a fellow who's belligerent, combative, and kicking windows out and what have you, to assume that, to consider that his refusal to cooperate, a refusal to take the test. In other words, his refusal to behave, to write that in his report as a refusal to submit to a test. I mean, is that unreasonable, even though it's not technically legally correct? But is that really that big an inconsistency to begin with? I mean, our position is that it's not a major inconsistency. It doesn't downplay his credibility. The officer clearly testified to all the other factors that he did witness, such as the defendant failing all the field sobriety tests. The defendant smelling like alcohol. The defendant slurring his words. The defendant speeding. And the other officers who were at the scene also testified to his out-of-control behavior. And there was an inconsistency that occurred on the report, but it did not negate his credibility. And the trial judge is an individual who determines the credibility of the witnesses and weighs evidence. The trial court had some confusion or inability to believe the defendant as well, because the defendant didn't remember that he was actually transported, moved into somebody else's squad car with intact windows and a cage in the back. And he insisted that he had ridden in the same squad car with the broken window. So, you know, in terms of credibility, didn't the trial judge discuss that he found the defendant's version not very credible? I think on her ruling she did mention that there was an inconsistency between the police officer's testimony and the defendant's testimony as to what occurred when he was transferred and how he was transferred into another vehicle. When you look at the videotape, does the defendant appear cooperative? I'm sorry? Does the defendant appear cooperative? In my opinion, no. Not at all. And as I was saying, regarding the inconsistency in the police report, it did occur. Trooper McNally clearly testified at trial that it did occur. He clarified it at trial. And then he went on to testify as to all the other factors that show that the defendant was clearly intoxicated and driving drunk. And our position is that the trial judge's conviction should be affirmed and the people rest on the brief. Following up on the procedural question Justice Carter raised, and that is the notice of appeal only includes the felony case number, the state has not made an issue of the fact that the DUI case number wasn't noted in the notice of appeal. Are you waiving that issue regarding our jurisdiction to review the sufficiency of the evidence on the DUI? The state has not been aware that the DUI was being contested or appealed. Okay. Well, I'm making you aware of it. What is your position now that you're aware of that? Because our jurisdiction is limited and we can't just go into issues that aren't properly preserved with that notice of appeal. I mean, if it hasn't been brought up with the defendant, then the state stands by its brief and asks that the trial judge's conviction be affirmed on all accounts. With regard to the defendant's argument about the source of the funding, you're aware that many items used by various police departments are purchased by drug forfeiture money, either the cash or forfeited cars, vehicles, and so forth. Would that make a difference legally as to the defendant's argument on appeal? I mean, I don't think those facts apply, but in that case, sure. There was drug forfeiture money used or any forfeited vehicles that were sold to purchase this vehicle, but would that make any difference, you think? In my opinion, no, because I believe that that is still state funds. That's right. And it belongs to the state. Once the vehicle or the funds are forfeited to the state, it becomes the state's money. In my opinion, correct. But not necessarily. There was a gentleman named Richard Meadows that traveled the state. He lost his daughter to a drunk driver. Shawna was her name. And he made it his mission before the state raised funds to put video cameras in squad cars, he made it his mission to get as many video cameras out of his private monies into squad cars. So the state really does have an obligation, and it's a pretty easy one to meet. All the prosecutor has to do is a little homework before trial, and so he can track or she can track those funds to tax monies. And I do agree that defense counsel makes a good point here that the state dropped the ball. How would you respond to that argument? It's an easy thing for the prosecutor to prepare for. In my opinion, I think the state provided enough information and evidence to establish that it was through state of Illinois funds. I mean, the officer was called to testify specifically for that issue, and at that point defendant could have easily cross-examined or impeached the officer if he wished to, and that did not occur. And in our interpretation, it clearly states that he says state of Illinois. I mean, it seems pretty black and white under the state's position. The burden always rests with the state, though. Correct. For the trial. We're not talking about here, but for the trial. If we find that issue lacking, what's the remedy? Can we reduce the charge? Is there another offense that might apply? I would say that it would be remanded at that point. I don't think the charges should be reduced because it's something that can easily be cured at trial. Can it be remanded? Hasn't double jeopardy attached if we find the evidence was insufficient? That would be an issue. Correct. Any other questions? Thank you. You did a nice job of fielding all the questions today. And I know normally in the appellate court we don't have an audience like this, so I appreciate that it was a little unnerving. Thank you. Counsel? Your rebuttal argument, and just for the audience, your rebuttal argument has to be confined to those issues that we discussed with Ms. Childry, and you can't bring up any new issues you may have forgotten the first time around. Understood, Judge. If I may, though, I did want to clarify one point that Justice Carter asked me about. This is not specifically rebuttal, but he asked whether the window was shattered. My recollection now is that it actually was shattered. Thank you for correcting your recollection. I apologize for misstating that. But I did want to emphasize that it was my cross-examination that yielded the testimony or concession from Trooper Ketter that the Central Management Systems is funded by taxes, I'm assuming, for the State of Illinois. He did not know the funding source of the Central Management Systems. Trooper Ketter could be a phenomenally competent fleet manager for the State of Illinois. That's a substantial job. He's got a lot of cars to maintain, a lot of inventory, and the maintenance issues with the vehicles as well as tracking where they are, who's driving them, who's using them. He may not know. He apparently did not know. I submit the source of funding of Central Management Systems and of the funding that was used to, if any, to acquire the vehicles that the Central Management Systems provided to the Illinois State Police. We submit that that is an irremediable lacuna, an irremediable hole in the proof offered by the State at trial, and it would not be subject, I submit, to your judgment. You rely heavily on the Bartlett case, right? Yes, Judge. Do you really think that was correctly decided? I mean, this guy damages a county. It's a jail, right? I believe so, yes. And they say you didn't prove. I mean, what's the State got to do, bring in a bricklayer? Build it and ask him who paid him? I mean, is there any other reasonable assumption in the world other than that that county jail is government supported? No, there would not be, Your Honor, because there is the prevalence more and more of private prisons, and that's becoming an issue on many fronts. However, in the case of an Illinois Department of Corrections prison or of a county jail, I think that a lot of people would assume that it is. But for an assumption to be reasonable, the inference, it doesn't have to be the only one. It just has to be reasonable, right? So the fact that it could have been, just as this case, this car could have been donated by God knows who, okay? Exactly, Judge. But that doesn't negate the fact that the reasonable assumption is that the taxpayers paid for that car. The fact that there's another assumption out there, it doesn't have to be the only possible conclusion, right? It just has to be a reasonable conclusion. The guiding light is, on a sufficiency of the evidence, is there a chance that somebody was wrongfully convicted? Yes, Judge. Is there a reasonable chance? Right. And- If a reasonable possibility is not excluded, then I submit that that leaves a reasonable doubt, which would undermine the validity of the verdict. It would require reversal, respectfully, Your Honor. What's the remedy? Is there a lesser offense that we could reduce it down to? That is not a question I've really thought about. I don't believe a straight criminal damage to property would still require testimony from a putative victim, Your Honor. I don't- A straight felony criminal damage to property only requires proof of the amount of the damage but not the source of the funds. Right. But I understand that here you're seeking an outright reversal and would prefer that we not even consider a lesser offense. A lesser offense, I'm sure my client would urge me to request before the court. So, yes, we would request the lesser offense if one is available. However, the proofs have closed. Well, I'm sure that will be something we'll discuss when we conference the case. With regard to the jurisdictional questions before, it is correct, isn't it, that the guilty findings by the judge in the written order, all four files were mentioned in that or all files were mentioned in that order? Yes, that's correct, Judge. But in the post-trial motions, they only talked about the felony. I think that I'd have to go back to the post-trial motion. The only number put on the order was the felony, but on the guilty findings, all numbers were put on that one order, is that correct? Yes, that's correct. So I might have made an error in not including all the case numbers. I will look at it as to whether I assume it's too late to amend the notice of appeal. It is. It's more than 30 days after the filing. But I commend your creativity. Right. But I think I already had to amend it because I FedExed the notice of appeal and I had to have it applied non-proton. But, yeah, I know that it's not too late, Your Honor. But, again, the guilty findings were on all matters. Yes, that's correct, Judge. We would hope that we preserved it as to the DUI finding. But the primary emphasis of the defendant is definitely on the criminal damage to government-supported property charges. Which is the most serious offense that he was sentenced for. Absolutely, Your Honor, yes. And we submit that even my learned colleagues' remarks make it clear that this witness, though articulate, though competent and responsive, did not know. He made assumptions as to the source of the funding. He did not know the source of the funding. Is it government? What's the exact term? Government-supported property, is that it? Yes, that's correct. Well, let's just suppose somebody did donate this car to the state. Is it unreasonable to assume that this trooper, that he says that's his assigned squad car, that he puts gas in it with a state credit card? So if somebody else gave him the car, the trooper's using it, the state's putting gas in it, changing the oil, replacing the tires, that's government-supported property, isn't it? The case law is it's got to be acquired with state funds or supported with state funds or with federal funds administered for state purposes. And I submit that the case law would require that the actual acquisition cost of the vehicle that was damaged be established as state funding or federal funding administered for state purposes. So if somebody donates a building to the state to use as a jail and they use it as a jail or penitentiary or whatever, the fact that it was originally given to the state means that can never, for purpose of this statute, be a state-supported property? I think that that would be an issue. I submit that that would probably not be a government-supported property in that case. Arguably, every dollar the state gets comes from the citizens. Yes, Judge. Most of it involuntarily through taxes. And so because somebody voluntarily gives the money to the state, what's the difference if now the state owns it? The emphasis of the charge of the crime is under the Illinois compiled statutes, under the criminal code, is clearly on a government-supported property. The state law has distilled it to property acquired or administered with. And the legislature said government-supported property, not property purchased by the government. That's correct, Your Honor. Thank you. Perfect timing. Thank you very much for your patience and cooperation here today. We'll be taking a short recess for a panel change and hopefully rendering a decision without undue delay. Thank you.